UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KEVIN W.,[1] | : | Case No. 3:22-cv-168 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Kevin W. brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #8).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on September 5, 2019, alleging disability due to blind or low vision due to retinal detachment, degenerative disc disease, chronic severe upper and lower back pain, fibromyalgia, post-traumatic stress disorder, spondylolisthesis, bulging disks with nerve compression, coronary artery disease, diabetes, and depression. (Doc. #8-6, *PageID* #241). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Heidi Southern. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since March 1, 2017, the alleged onset date.

Step 2: He has the following severe impairments: Degenerative Disc Disease of the Lumbar Spine; Fibromyalgia; Obesity; Diabetes Mellitus; Steatohepatitis; Hypertension; Coronary Artery Disease; Obstructive Sleep Apnea; Chronic Obstructive Pulmonary Disease; Tobacco Use Disorder; Depressive Disorder; Anxiety Disorder; and Post-Traumatic Stress Disorder.

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of "sedentary work … subject to the following limitations: (1) would require the use of a cane for balance and ambulation; (2) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (3) never climb ladders, ropes, or scaffolds; (4) avoid concentrated exposure to extreme cold, extreme heat, humidity,

>wetness, and atmospheric conditions; (5) no exposure to unprotected heights or moving mechanical parts; (6) limited to simple, routine, repetitive tasks; (7) unable to perform at a production-rate pace (e.g. assembly-line work), but able to perform goal-oriented work (e.g. office cleaner); (8) occasional contact with coworkers and supervisors, but no teamwork or tandem tasks and no over-the-shoulder supervision; (9) occasional contact with the general public as part of the job duties; and (10) occasional changes in an otherwise routine work environment with those changes explained in advance."
>
>Plaintiff is unable to perform his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #8-2, *PageID* #s 42-53). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since March 1, 2017. *Id.* at 53.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 39-53), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.  **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.    Discussion

In his Statement of Errors, Plaintiff argues that the ALJ erred in evaluating the medical source opinions provided by the consulting examining psychologist and the state agency consultants. (Doc. #9, *PageID* #s 1281-88). In response, the Commissioner maintains that the ALJ properly evaluated the medical opinions consistent with the regulations and that her decision is supported by substantial evidence. (Doc. #11, *PageID* #s 1295-1306).

Since Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of

[her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

Here, Plaintiff alleges that the ALJ erred in her assessment of the consulting psychologist, Ryan R. Wagner, Psy.D. (Doc. #9, *PageID* #s 1281-85). Dr. Wagner examined Plaintiff on November 11, 2019 for disability purposes. (Doc. #8-8, *PageID* #s 1121-27). On examination, Dr. Wagner described Plaintiff as "a somewhat cooperative man with whom rapport was difficult to establish." *Id*. at 1124. He characterized Plaintiff has having adequate grooming and hygiene and that "[h]e did not appear to exaggerate or minimize his difficulties." *Id*. Plaintiff's thought processes were reported to be "somewhat perseverative, focusing on the ways in which he perceives that he has been mistreated." *Id*. Dr. Wagner also found that Plaintiff's "thought content was noticeable for traumatic re-experiencing and irritability." *Id*. Otherwise, he found Plaintiff to have adequate receptive language skills and clear and well-articulated speech. *Id.*

As for Plaintiff's affect and mood, Dr. Wagner described him as exhibiting an "irritable demeanor" with a "tendency to go on rants." *Id*. Plaintiff also informed Dr. Wagner that "he has

struggled with suicidal thoughts, [though] he denied any intent." *Id*. Dr. Wagner further noted that Plaintiff "appeared to be nervous, tense, and on edge throughout the evaluation[,]" observing that "[h]e fidgeted in his chair and appeared to be easily overwhelmed[]" but did not otherwise display "other autonomic or motoric indications of anxiety." *Id*. With regard to his sensory and cognitive functioning, Dr. Wagner found Plaintiff to be "alert, responsive, and oriented to all spheres" and functions in the low average range of intelligence. *Id*. Further, while Dr. Wagner found Plaintiff's judgment "to be sufficient for him to make decisions affecting his future and to conduct his own living arrangements efficiently[,]" he found that Plaintiff had "limited insight into his difficulties" *Id*. at 1125.

Following his examination, Dr. Wagner diagnosed Plaintiff with Posttraumatic Stress Disorder and Major Depressive Disorder, which he characterized as "Recurrent, Severe without Psychotic Features[.]" *Id*. He opined that "[w]ith appropriate interventions, [Plaintiff's] prognosis is guarded-to-poor." *Id*. As for Plaintiff's functional limitations, Dr. Wagner provided that Plaintiff performed within the low average range based on his performance of a brief abstract reasoning activity and a brief short-term memory activity, which suggested that he did not have a significant difficulty understanding instructions or remembering instructions. *Id*. at 1125-26. He also pointed out that Plaintiff did not report problems with learning in school or work-related tasks and that he was "able to converse effectively to complete the evaluation." *Id*. As for Plaintiff's ability to sustain concentration and persistence in work related activities at a reasonable pace, Dr. Wagner noted that Plaintiff "struggled with serial sevens but completed serial threes which is suggestive of some problems maintaining attention and focus." *Id*. at 1126. Additionally, while

Plaintiff exhibited "adequate task persistence during the evaluation[,]" he also "displayed some indications of distraction during the evaluation[]" and reported problems in both school and the workplace with attention and concentration. *Id*.

In assessing Plaintiff's ability to maintain social interactions, Dr. Wagner reiterated that Plaintiff "presented as somewhat irritable but otherwise cooperative throughout the evaluation." *Id*. He further pointed out that Plaintiff failed to describe any friends or family with whom he had positive relationships and instead "described a history of conflicts with people within multiple settings which may lead to conflicts in future work settings when presented with work related stressors." *Id*. He also noted that Plaintiff "presents with low average cognitive ability which is not suggestive of significant difficulty understanding and responding to supervisor requests." *Id*. However, he pointed out that Plaintiff "described potential impacts of mental health problems on work performance which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker relationships." *Id*. Finally, in assessing Plaintiff's ability to deal with normal pressures in a competitive work setting, Dr. Wagner opined that Plaintiff's depressive symptoms "may compromise his ability to respond to work pressures and lead to increased emotional instability and withdrawal" and that his anxious symptoms "may compromise his ability to respond to work pressures and lead to increased likelihood of agitation and experiences of anxiety attacks." *Id*.

Upon review, the ALJ found Dr. Wagner's opinion "somewhat persuasive[,]" explaining:

> Dr. Wagner based his opinion upon examination of [Plaintiff], a review of the record, his expertise, and program knowledge. Dr. Wagner is the only mental health professional to examine [Plaintiff] and offer an opinion regarding his psychological functioning. Dr. Wagner's opinion is consistent with [Plaintiff's] minimal mental

8

> health treatment in the record showing moderate symptoms of depressed mood, anxiousness, hopelessness, anger, and despair, but with no suicidal ideation. However, Dr. Wagner did not express his limitations in vocationally relevant terms, and these were somewhat vague.

(Doc. #8-2, *PageID* #45) (record citations omitted).

As noted above, Plaintiff contends that the ALJ erred by not following the relatively new regulations regarding the assessment of medical opinions when evaluating Dr. Wagner's opinions. (Doc. #9, *PageID* #s 1281-85). Specifically, he points out that the regulations require the ALJ to articulate her consideration of the supportability and consistency factors for each medical opinion and that the ALJ failed to analyze Dr. Wagner's opinion for supportability and that her analysis of the consistency factor is not supported by substantial evidence. *Id.*

Plaintiff's argument is well taken. As an initial matter, the plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether he needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth his rationale on what are deemed to be the two most important factors—supportability and consistency. *See id.*

In finding Dr. Wagner's opinion to be "somewhat persuasive[,]" the ALJ failed to explain how she considered the supportability factor in reaching this conclusion. As a result, it is unclear why she accepted certain findings and rejected others. Additionally, the Commissioner's *post hoc* rationalization of how the ALJ could have applied the factors to Dr. Wagner's medical opinion based on her earlier summary of Dr. Wagner's findings does not cure this deficiency. The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered her decision and "imagine manifold ways in which the factors could have been applied to the evidence that was presented." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Instead, it is the obligation of the ALJ "in the first instance to show his or her work*, i.e*., to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id*. As such, by not explaining how she considered the factor of supportability when evaluating Dr. Wagner's medical opinion, the ALJ failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

Additionally, an ALJ's mischaracterization of the record typically requires remand. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."); *Dalton v. Comm'r of Soc. Sec.*, No. 2:20-CV-3636, 2021 WL 2430939, at *11 (S.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 2853442 (S.D. Ohio July 8, 2021) (remanding due to factual

10

inaccuracies in ALJ's characterization of treating source's notes). In assessing Dr. Wagner's opinion for consistency, the ALJ stated that "Dr. Wagner's opinion is consistent with [Plaintiff's] minimal mental health treatment in the record showing moderate symptoms of depressed mood, anxiousness, hopelessness, anger, and despair, but with no suicidal ideation. (Doc. #8-2, *PageID* #45) (citing Doc. #8-9, *PageID* #s 1168, 1206; Doc. #8-7, *PageID* #378). At the outset, it is notable that Dr. Wagner characterized Plaintiff's depressive disorder as "Severe," not moderate. (Doc. #8-8, *PageID* #1125). Similarly, several of Plaintiff's treatment providers also characterized his depressive disorder as "severe." (Doc. #8-7, *PageID* #s 368, 373, 564).

Additionally, the ALJ's finding that Plaintiff's depression was unaccompanied by suicidal ideation is unsupported by the record. Again, Dr. Wagner himself reported that Plaintiff "acknowledged that [Plaintiff] has struggled with suicidal thoughts, [though] he denied any intent." (Doc. #8-8, *PageID* #1124). Further, one of the treatment records that the ALJ references in support of his finding of "no suicidal ideation" actually states that Plaintiff "has had thoughts of SI [suicidal ideation], but denies intent or plan." (Doc. #8-7, *PageID* #378). Plaintiff's depression was accompanied by suicidal thoughts on other occasions as well. For instance, in January 2019, Plaintiff was noted as having "[p]assive suicidal ideations." (Doc. #8-7, *PageID* #386). The following month, Plaintiff went to the emergency room, reporting that "my mind is broke. I want to kill myself. I have an [appointment] for March with a psychiatrist and I can't wait till then, it's getting worse." (Doc. #8-8, *PageID* #646). Plaintiff was then later documented as telling his psychiatrist that "I do not know how I can go on there are times I do not want to live" and that he had thoughts of hanging himself, going so far as to securing a rope and a noose. (Doc.

11

#8-9, *PageID* #s 374-75). Thus, to the extent that the ALJ cited these records to support her finding that Dr. Wagner's findings are not consistent with Plaintiff's treatment records, the ALJ has mischaracterized these records. As a result of this mischaracterization, the ALJ's consistency determination is not supported by substantial evidence. *See Johnson,* 2016 WL 7208783, at *4; *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (remand required, in part, because the ALJ was "selective in parsing the various medical reports"). Accordingly, as the ALJ's decision is not supported by substantial evidence, Plaintiff's Statement of Errors is well taken.[2]

### IV.     Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

*Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand of this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for period of disability and Disability Insurance Benefits should be granted.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #9) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4 This matter is **REMANDED** to the Social Security Administration under

        sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5.     The case is terminated on the Court's docket.

<br>

September 25, 2023                              *s/Peter B. Silvain, Jr.*
                                                      Peter B. Silvain, Jr.
                                                      United States Magistrate Judge